Baruch S. Gottesman, Esq.
185-12 Union Turnpike
Fresh Meadows, NY 11366
Email: bg@gottesmanlegal.com
New York Bar Number #4480539
*Application for pro hac vice admission
pending*

Aryeh Kaufman, Esq. SBN 289745
**The Law Office of Aryeh Kaufman**
5482 Wilshire Blvd., Suite #1907
Los Angeles, CA 90036
Email: aryeh@akaufmanlegal.com

*Counsel for Plaintiff*
**DEUCE STUDIO**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEUCE STUDIO, a United Kingdom Partnership,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ILLEGAL CIVILIZATION LLC, a California Limited Liability Company; ILLEGAL CIV CINEMA, LLC, a California Limited Liability Company; UMG COMMERCIAL SERVICES, INC., a Delaware Corporation; UNIVERSAL MUSIC INVESTMENTS, INC., a California Corporation; and UMG RECORDING SERVICES, INC., a Delaware Corporation;**<br><br>**Defendants.** | Case Number:  2:19-cv-06564<br><br>**COMPLAINT FOR:**<br><br>1. **INFRINGEMENT**<br>2. **REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION**<br>3. **COMMON LAW COPYRIGHT INFRINGEMENT**<br>4. **VIOLATION OF BERNE CONVENTION**<br>5. **CALIFORNIA CIVIL CODE § 980(b)**<br>6. **CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.**<br>7. **CONVERSION**<br><br>**JURY TRIAL DEMANDED** |

Comes now the Plaintiff DEUCE STUDIO, by and through their counsel, Baruch S. Gottesman, Esq**.**, whose application for admission *pro hac vice* is forthcoming and local counsel Aryeh Kaufman, Esq., of The Law Office of Aryeh Kaufman, as and for its Complaint against Defendants ILLEGAL CIVILIZATION LLC, ILLEGAL CIV CINEMA, LLC, UMG COMMERCIAL SERVICES, INC., UNIVERSAL MUSIC INVESTMENTS, INC., and UMG RECORDING SERVICES, INC. and does respectfully allege as follows:

## I.     PARTIES

1.     At all times relevant to this Complaint, Plaintiff DEUCE STUDIO was a partnership organized and existing under United Kingdom Law.  In this Complaint, DEUCE STUDIO is sometimes referred to as "Designer" or "Plaintiff" where appropriate.

2.     The individual members of the DEUCE STUDIO partnership are: (i.) Matthew Down; (ii.) Richard Patrick; and (iii.) Jonathan Aldrich, each of whom is both a citizen of and resident in the United Kingdom.  No partner is a United States citizen.

3.     At all times relevant to this Complaint, Defendant ILLEGAL CIVILIZATION LLC was a limited liability company organized and existing under California law.

4.     Upon information and belief, at all times relevant to this Complaint ILLEGAL CIVILIZATION LLC was a creative production and design company which conducted business, designed, manufactured, and distributed products based out of the Toluca Lake section of Los Angeles, here in Los Angeles County, California.

5.     At all times relevant to this Complaint, Defendant ILLEGAL CIV CINEMA, LLC was a limited liability company organized and existing under California law.

6.      Upon information and belief, at all times relevant to this Complaint ILLEGAL CIV CINEMA, LLC was a creative production and design company which conducted business, designed, manufactured, and distributed products in the Toluca Lake section of Los Angeles, here in Los Angeles County, California.

7.      In this Complaint, both ILLEGAL CIVILIZATION LLC and ILLEGAL CIV CINEMA, LLC are sometimes referred to collectively as "Illegal Civ", where appropriate.

8.      At all times relevant to this Complaint, Defendant UMG COMMERCIAL SERVICES, INC. was a corporation organized and existing under Delaware law which was authorized to conduct business in California, and which maintained its primary place of business in the Santa Monica section of Los Angeles, here in Los Angeles, California.

9.      At all times relevant to this Complaint, Defendant UNIVERSAL MUSIC INVESTMENTS, INC., was a corporation organized and existing under California law which maintained its primary place of business in the Santa Monica section of Los Angeles, here in Los Angeles County, California.

10.      At all times relevant to this Complaint, UMG RECORDING SERVICES, INC. was an authorized foreign corporation operating out of its primary place of business in the Santa Monica section of Los Angeles, in Los Angeles, California.

11.      In this Complaint, both UMG COMMERCIAL SERVICES, INC., UNIVERSAL MUSIC INVESTMENTS, INC., and UMG RECORDING SERVICES, INC. are sometimes referred to collectively as "Universal" where appropriate.

## II.      JURISDICTION AND VENUE

12.      Plaintiff respectfully submits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question

jurisdiction); 28 U.S.C. § 1332 (diversity jurisdiction); and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) because all Defendants reside in this District and because a substantial part of the events giving rise to the claims described in this Complaint occurred in this District.

14.     Venue is proper in the Los Angeles Divisional office of the Central District because Defendants are domiciled in Los Angeles County.

### III.     FACTUAL ALLEGATIONS

15.     As described fully below, the Defendants have directly, intentionally, knowingly and willfully exploited the intellectual property of the Plaintiff for their own financial benefit and in violation of California and federal law.

### A.     Deuce Studio and #wimbers130

16.     "The Championships, Wimbledon, commonly known simply as Wimbledon, is the oldest tennis tournament in the world, and is widely regarded as the most prestigious". *See* www.wikipedia.org/wiki/The_Championships,_Wimbledon (last visited July 24, 2019).

17.     While The Championships and its competitors are highly respected in the United States – in the United Kingdom, Wimbledon can fairly be described as an obsession.  For almost a century-and-a-half, Wimbledon's traditions, fashions, culture and styles have defined British design and influenced the local art communities.

18.     In 2016, the 130th edition of The Championships was held, and the anniversary was marked as a major milestone in the United Kingdom, and as a time for historic reflection and nostalgia.

19.     Deuce Studio, a fresh partnership of creative British graphic designers celebrated the momentous occasion by crafting a set of 13 limited edition prints (one to be released each day of the contest) which reflected Wimbledon's

storied past.  Each of the prints included an abstract representation of an important moment in Wimbledon history.

20.    The print at issue in this Complaint was titled "The First Championship" which marked the world's first official lawn tennis tournament held at the All England Croquet and Lawn Tennis Club in Wimbledon on July 9th through 19th, 1877.  The print is shown below:

*[Remainder of Page Intentionally Left Blank]*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22   Illustration 1.      "The First Championship" design in #wimbers130

23

24   21.   In this Complaint, the design shown above (illustration 1) is
sometimes referred to as the "original design" where appropriate.  Deuce Studio titled

25

their project "#wimbers130", and in this Complaint the project as a whole is referred to as "project" or with the #wimbers130 hashtag where appropriate.

22.    As can be seen above, the signature style of the #wimbers130 project included a distinct color palette, sharp lines, tennis iconography and specific references to historic events related to the The Championships, Wimbledon.

23.    The original design included at least the following elements:

- A global background in a distinct shade of green; evoking the natural grass field of Wimbledon;

- A distinct green background that ombrés from a darker shade on the bottom left to a lighter shade on the top right (as low as: 89, 157, 98 at the bottom left corner up to 114, 181, 146 on the top right corner as measured in Adobe RGB by the "Digital Color Meter" utility on Mac);

- Two lines of writing in the Domain Display Semi Bold Italics font with two characters on each line;

- The first letter of the top line of text was white, and the second letter was a distinct shade of yellow (235, 254, 60 as measured in RGB by the "Digital Color Meter" utility on Mac);

- The bottom line of text was both in the same distinct shade of yellow as the second letter of the top line;

- Two white unconnected lines that appear to meet in right angles off the page, evoking the white line markings against the grass of Wimbledon's tennis green;

- A circle in the same distinct shade of yellow as the text slightly above the text and to the right of the white line; evoking a regulation tennis ball;

- An oval below the yellow circle in a distinct shade of dark green (43, 67, 51, as measured in RGB by the "Digital Color Meter" utility on Mac); evoking the shadow of a regulation tennis ball suspended above the tennis green, which would darken but not blacken the ground underneath;

- Four columns of black text along the bottom of the print that overwrites the bottom white line;

- Significant larger font sizes and bold text in the first and fourth column; and generally

- The unique and distinct colors used in the original design were consistent with the #wimbers130 project, and consistent with the project theme whose designs were intended to evoke specific historical moments in the history of Wimbledon and its legendary grass tennis green.

24.    #wimbers130 in general and the original design in particular, were greeted with widespread acclaim.  Design discussion boards, blogs, and other social media praised the stylish, multi-layered, and thoughtful nature of #wimbers130 and the original design.

25.    Design Week – regarded as the journalistic bible of the industry – featured the #wimbers130 project on its website's front page, which exposed the project to Design Week's 538,000 industry-specific twitter followers and innumerable website visitors.

26.    Potential clients have consistently contacted the Creator with solicitations for the purchase of the prints themselves, and to use the original design for commercial purposes.

27.    These highly valuable, unique prints were extremely valuable to the Plaintiff as part of their design portfolio.  They would also be extremely valuable to any user looking for fresh, unique, stylish, sporty and youthful design palette.

## B.    Publication

28.    The Designer first displayed the #wimbers130 project on or about June 26, 2016 for editorial purposes at <http://wimbers130.deucestudio.com>, which site was shared with selected clientele and potential customers of Plaintiff.

On September 2, 2016, the editorial page was permanently moved to <https://deucestudio.com/projects/wimbers130/>.

29.     The original design included the legend "A project of Deuce Studio" and the posting for editorial purposes on the Deucestudio.com website was on a page that included a link to the "Terms of Service" described below in Paragraphs 30 and 31.

30.     At the time that the #wimbers130 project was first published and continuing through the filing of this complaint, the "Terms of Service" subpage of the deucestudio.com website (available at <https://deucestudio.com/terms-and-condition>) was available as a link on the footer of every page on the deucestudio.com website, including on every page where the original design was posted.

31.     The "Terms of Service" subpage provided and provides, in relevant part, that:

> "If you continue to browse and use this website, you are agreeing to comply with and be bound by the following terms and conditions of use, which together with our privacy policy govern Deuce Studio's relationship with you in relation to [the <deucestudio.com>] website.

> "The term 'Deuce Studio' or 'us' or 'we' refers to the owner of the [<deucestudio.com>] website whose registered office is Meadowcroft, Palmers Green, London.  The term 'you' refers to the user or viewer of our website.

> "The use of this website is subject to the following terms of use:

> * * * *

> "•     This website contains material which is owned by or licensed to us. This material includes, but is not limited to, the design, layout, look, appearance and graphics. Reproduction is prohibited other than in accordance

1
2
       with the copyright notice, which forms part of these terms and conditions."

3
4
5
6
  32. The Designer's first commercial publication and first publication in the United States was made on the Behance.net website on or about July 15, 2016. Behance is a website owned by Adobe which provides designers an opportunity to publish, market and ultimately sell their editorial and commercial designs to the public.  *See* http://en.wikipedia.org/ wiki/Behance (last checked July 24, 2019).

7
8
9
10
11
  33. Behance allows its members to publish to the industry subject to "creative commons" licenses, which grant narrow rights for the non-commercial use of original material, and which otherwise fully upholds the intellectual property and other rights of the creators.  Creative common licenses have consistently been upheld by state and federal courts throughout the United States.

12
13
14
15
16
17
  34. In this case, the original design was published under an "Attribution-NonCommercial-NoDerivatives 4.0 International" license, sometimes known as "CC BY-NC-ND 4.0".  The license was indicated by the creative commons iconography posted with the project on Behance.net (See Illustration 2 showing the license at <https://www.behance.net/gallery/40659567/Wimbers130> and Illustration 3 showing the pop up when the cursor scrolls over the licensing iconography".

18
19
20
21
22
23
24
25



Illustration 2 – Licensing information at Behance.net for the #wimbers130 project



Illustration 3 – Popup displayed when cursor hovers over the licensing information

*[Remainder of Page Intentionally Left Blank]*

1

2

3     35.   The "Read More" link with a "open in separate page" icon, takes

4   users     to     the     website:     <https://creativecommons.org/licenses/by-nc-
nd/4.0/deed.en_US> which provides as follows:

5

6   This is a human-readable summary of (and not a substitute for) the license. Disclaimer.

7   # You are free to:

8

9   **Share** — copy and redistribute the material in any medium or format

10  The licensor cannot revoke these freedoms as long as you follow the license terms.

11

12  # Under the following terms:

13

14   **Attribution** — You must give appropriate credit, provide a link to the license,

15  and indicate if changes were made. You may do so in any reasonable
manner, but not in any way that suggests the licensor endorses you or your

16  use.

17   **NonCommercial** — You may not use the material for commercial purposes.

18   **NoDerivatives** — If you remix, transform, or build upon the material, you

19  may not distribute the modified material.

20

21  **No additional restrictions** — You may not apply legal terms or

22  technological measures that legally restrict others from doing anything the
license permits.

23  Illustration 4 – "human-readable summary" of the creative commons license

24

25

36.    The license itself, linked to by the "license" hyperlink is published at: <https://creativecommons.org/licenses/by-nc-nd/4.0/legalcode> which provides in relevant part as follows:

**"Section 3 – License Conditions.**

"Your exercise of the Licensed Rights[1] is expressly made subject to the following conditions.

"**a  Attribution**.

"1.    If You Share the Licensed Material, You must:

A. retain the following if it is supplied by the Licensor with the Licensed Material:
  i.  identification of the creator(s) of the Licensed Material and any others designated to receive attribution, in any reasonable manner requested by the Licensor (including by pseudonym if designated);
  ii.  a copyright notice;
  iii. a notice that refers to this Public License;
  iv. a notice that refers to the disclaimer of warranties;
  v.  a URI or hyperlink to the Licensed Material to the extent reasonably practicable;

B. indicate if You modified the Licensed Material and retain an indication of any previous modifications; and

C. indicate the Licensed Material is licensed under this Public License, and include the text of, or the URI or hyperlink to, this Public License.

"For the avoidance of doubt, You do not have permission under this Public License to Share Adapted Material.

---

1  "Licensed Rights" are defined in Section 1 of the License as: "the rights granted to You subject to the terms and conditions of this Public License, which are limited to all Copyright and Similar Rights that apply to Your use of the Licensed Material and that the Licensor has authority to license."

"2.   You may satisfy the conditions in Section 3(a)(1) in any reasonable manner based on the medium, means, and context in which You Share the Licensed Material. For example, it may be reasonable to satisfy the conditions by providing a URI or hyperlink to a resource that includes the required information.

"3.   If requested by the Licensor, You must remove any of the information required by Section 3(a)(1)(A) to the extent reasonably practicable.

## C.   Illegal Civ's and UMG's Online Store

37.   Illegal Civ have been described as "a creative collective producing clothes and video out of LA".  Illegal Civ is centered on West Coast youth skating culture, and has a passionate global following.

38.   Illegal Civ maintains an Instagram.com account which as of the filing of this Complaint had two hundred and twenty-three thousand (223,000) followers and which while the infringing product was actively sold, was monetized through a link in its profile to the website: <store.illegalcivilization.com>.

39.   Upon information and belief, Universal are subsidiaries of the well-known global music group based in Santa Monica, which is known as one of the "Big Three" record labels that distribute and merchandise for many artists and creators.

40.   The full scope of the relationship between Illegal Civ and Universal is not known to Plaintiff but is known to Defendants.

41.   Upon information and belief, at the very least Illegal Civ infringing products (sometimes referred to in the social media industry as "merch") sold through <store.illegalcivilization.com> were marketed and sold by Universal.

42.   The basis for Plaintiff's information and belief that Universal was responsible for the marketing and sales of the infringing products includes but is not limited to a "Terms of Service" link that was posted on the

<store.illegalcivilization.com> page while the infringing products were sold, which directed users to <https://privacy.umusic.com/store-terms-umg.html> that purports to describe the terms and conditions by which purchasers "acknowledge that only this Website is controlled by UMG [Commercial Services, Inc.]"

43. The basis for Plaintiff's information and belief that Universal marketed and sold the infringing products also includes but is not limited to the "Privacy Policy" link on <store.illegalcivilization.com> which directs users to <https://privacy.umusic.com> that states "WHO WE ARE This is site is operated by Universal Music Investments, Inc.".

44. The basis for Plaintiff's claim that Universal marketed and sold the infringing products also includes but is not limited to the current language on the store.illegalcivilization.com webstore which provides that "UMG Recording Services, Inc." will send e-mails. See a screenshot as of April 8, 2019 below:



Illustration 6 – Screenshot of Store on April 8, 2019

45. On or about late 2018, Illegal Civ and Universal dropped – "drop" being a term of art among millennial content producers for the public release to

market and sale of an album, movie, or other recorded content – "Illegal Civilization 3" a documentary-style movie about skating culture on the West Coast and elsewhere. Illegal Civilization 3 included the original design in its intros and outros, and marketing material.

46.     Illegal Civ and Universal also began to sell other infringing commercial products described more fully below which upon information and belief were co-produced, co-marketed, and co-sold both by Illegal Civ and Universal.

47.     The basis for the Plaintiff's information and belief that the movie and the infringing commercial products were co-produced, co-marketed and co-sold by Illegal Civ and Universal includes, but is not limited, to the sale of the film through the website <store.illegalcivilization.com>, which as described above repeatedly referred to Universal's ownership, management, and responsibility for the website.

### D.     Defendants' Infringement

48.     Without limitation to other infringements, the film's intros and outros included the original design.  Videos of the infringing use of the design will be shown to the court at the hearing on the Preliminary Injunction.

49.     To market the film, Defendants published a poster on their social media channels commercializing the original design, as shown below:

*[Remainder of Page Intentionally Left Blank]*



Illustration 7 – October 8, 2018 post on illegalciv's Instagram.com page

50.    The poster's infringement of the original design speaks for itself, and includes, but are not limited to, the following infringing elements:

- A global background in solid green (measured as 95, 164, 115 by the "Digital Color Meter" utility on Mac) which was the average color of the background green of the original design;

- Two lines of writing in a font that is similar in appearance to the Domain Display Semi Bold Italics font used in the original design; with two characters on the first line and one character on the bottom line;

- The top line of text is in white and the bottom line is in a distinct shade of yellow (235, 254, 60 as measured in RGB by the "Digital Color Meter" utility on Mac) in blatant copy of the original;

- Two white unconnected lines that appear to meet in right angles off the page, evoking the white line markings against the grass of Wimbledon's tennis green in blatant copy of the original

- A circle in the same distinct shade of yellow as the text slightly above the text and to the right of the white line; evoking a regulation tennis ball, in blatant copy of the original;

- An oval below the yellow circle in a distinct shade of dark green (43, 67, 51, as measured in RGB by the "Digital Color Meter" utility on Mac); evoking the shadow of a regulation tennis ball suspended above the tennis green, which would darken but not blacken the ground underneath, in blatant copy of the original;

- Four columns of black text along the bottom of the print that overwrites the bottom white line, in blatant copy of the original;

- Significant larger font sizes and bold text in the first and fourth column, in blatant copy of the original; and generally

- The designs were clearly spaced and sized based on the original as shown below:

*[Remainder of Page Intentionally Left Blank]*

1
2
3
4
5
6
7
8
9
10
11
12
13
14




Deuce Studio
Original Design

Illegal Civilization
Copied Design

15
16    Illustration 8 –   Comparison of the original design as published by Plaintiff and
                        the infringing poster published by the Defendants.
17
18          51.    For ease of comparison an overlay of the two products with the

19   original colors and sizing preserved is shown below:

20
21                        *[Remainder of Page Intentionally Left Blank]*
22
23
24
25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21
22
23  Illustration 9 – Overlay showing comparison between original and infringing design
24
25

52.     As part of the marketing program for the release of Illegal Civilization 3, the Defendants sold a commercial product branded in the style of the film, known in the industry as "merch".

53.     The "merch" for Illegal Civilization 3 included a stylized box, that included a DVD and "illegal civ"-branded tennis ball.

54.     The "merch" was produced, marketed, sold and distributed by Universal and Illegal Civ, and was a blatant knock-off of the original design.

55.     The infringing commercial product was designed with the following elements that are a knock off of the original design:

- A global background in solid green (measured as 95, 164, 115 by the "Digital Color Meter" utility on Mac) which was the average color of the background green of the original design;

- The inclusion of a tennis ball which would otherwise be inexplicable absent the attempt to knock-off the original tennis-themed design;

- Two lines of writing in a font that is similar in appearance to the Domain Display Semi Bold Italics font used in the original design; with two characters on each line;

- The top line of text is in white and the bottom line is in a distinct shade of yellow (235, 254, 60 as measured in RGB by the "Digital Color Meter" utility on Mac) in blatant copy of the original;

- Two white unconnected lines that appear to meet in right angles off the page, evoking the white line markings against the grass of Wimbledon's tennis green in blatant copy of the original

- A circle in the same distinct shade of yellow as the text slightly above the text and to the right of the white line; evoking a regulation tennis ball, in blatant copy of the original; and

- An oval below the yellow circle in a distinct shade of dark green (43, 67, 51, as measured in RGB by the "Digital Color Meter"

1
2

utility on Mac); evoking the shadow of a regulation tennis ball suspended above the tennis green, which would darken but not blacken the ground underneath, in blatant copy of the original.

3
4

56.     Below is a sample of the infringing commercial product.

5
6
7
8
9
10
11
12
13



14

Illustration 10 – Post on Illegal Civ's Instagram.com
accounting marketing the infringing product.

15
16

57.     Defendants used a knock-off of the design in the intros and outros of the film that was included in the complementary DVD enclosed with the infringing commercial product.

17
18

58.     For the avoidance of doubt – at no time did the infringing material attribute the Creators.  And at no time were the infringing material used for non-commercial purposes.  At no time did the infringing material maintain the integrity of the original design – all of which violated the creative commons license.

19
20
21
22

59.     In addition, Defendants breached the creative commons license and Copyright Law by failing to retain the following information, as required by the license:

23
24
25

i.     The identification of Deuce Studio as the Creator of the original design;

ii.    a copyright notice;

iii.   a notice that refers to the creative commons license;

iv.    a notice that refers to the disclaimer of warranties included in the license;

v.     a URI or hyperlink to the Licensed Material even though doing so was reasonably practicable;

vi.    indication that the original design was modified; and

vii.   indicate that the original design was licensed under the creative commons license.

60.     By failing to include these required elements, the Defendants have affirmatively and proactively removed the copyright management information included on the original design and also failed to include the required information pursuant to the creative commons license and copyright law

61.     Defendants affirmatively and proactively removed other copyright information by removing the "a project of Deuce Studio" from the design.

## FIRST CLAIM FOR RELIEF
### INFRINGEMENT

62.     Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 62 as if fully set forth herein.

63.     Defendants published and sold the infringing commercial product in violation of the Plaintiff's copyright and in violation of the creative commons license.

64.     Defendants used the original design in their movie in violation of the Plaintiff's copyright and in violation of the creative commons license agreement.

65.     Defendants' acts are and were performed without the permission, license, or consent of Plaintiff.

66.     Defendants acted with willful disregard of the laws protecting Plaintiff's copyright and other design rights.

67.    Defendants infringed Plaintiff's copyrights in violation of 17 U.S.C. § 501.

68.    Plaintiff has sustained and will continue to sustain substantial damage in an amount not yet fully ascertainable, including but not limited to damage to their business reputation and goodwill.

69.    Upon information and belief, Defendants have obtained profits recoverable under 17 U.S.C. § 504, and Plaintiff will require an accounting from the Defendants of all monies generated from the infringing commercial products and other violations.

70.    In the alternative and at their election, Plaintiff is entitled to seek maximum statutory damages for each separate act of willful infringement by Defendants in an amount of $150,000 per each infringement.

71.    Plaintiff has suffered and continues to suffer irreparable harm and damage as a result of the above-described acts. Accordingly, Plaintiff seeks temporary and permanent injunctive relief pursuant to 17 U.S.C. § 502, as well as seizure of the infringing commercial products.

72.    Plaintiff is entitled to recover from the Defendant his attorney's fees and costs of suit, pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF
## REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION

73.    Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 72 as if fully set forth herein.

74.    Defendants without Plaintiff's knowledge, permission, or authorization, and in blatant violation of the creative commons license and in violation of Copyright Law intentionally removed and/or altered copyright management information for the original design including by among other things failing to attribute the original design, in violation of 17 U.S.C. § 1202(b)(1).

75.     Defendants without Plaintiff's knowledge, permission, or authorization and in blatant violation of the creative commons license and Copyright Law thereafter distributed the infringing commercial product having reasonable grounds to know that such acts will induce, enable, facilitate, or conceal an infringement of copyright in violation of 17 U.S.C. §1202(b)(2) and (3).

76.     Defendants removal or alteration of copyright management information was and is willful and intentional, and was done with full knowledge of Plaintiff's rights under Copyright Law, and in disregard of those rights.

77.     Plaintiff is entitled under 17 U.S.C. § 1203(b)(1) to the entry of a temporary and permanent injunction to prevent or restrain Defendant from removing Plaintiff's copyright management information or distributing Plaintiff's copyrighted works knowing that such copyrighted information has been unlawfully removed.

78.     Plaintiff is entitled to recover his actual damages suffered as a result of the violation and any profits of Defendant attributable to the violation and not taken into account in computing actual damages, or, at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 1203(c).

79.     Plaintiff is entitled to recover costs and attorney's fees from Defendant pursuant to 17 U.S.C. § 1203(b)(4) and (5)

## THIRD CLAIM FOR RELIEF

## COMMON LAW COPYRIGHT INFRINGEMENT

80.     Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 79 as if fully set forth herein.

81.     The acts complained of herein constitute infringement of Plaintiff's copyright and other intellectual property rights under the common law of California and/or the United Kingdom.

# FOURTH CLAIM FOR RELIEF

## VIOLATION OF BERNE CONVENTION

82. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 81 as if fully set forth herein.

83. Additionally and/or in the alternative to the copyright claims above, the Plaintiff alleges that both the United States and the United Kingdom are part of the union of countries that have joined in the Berne Convention for the Protection of Literary and Artistic Works of September 9, 1886, as amended (the "Berne Convention"). The Berne Convention provides copyright protection to authors of literary and artistic works and this protection applies in all member countries of the Berne Convention.

84. The Berne Convention provides that the authors of works are entitled to copyright protection under the laws of the country of origin together with the laws of the country where protection is claimed.

85. Defendants have violated and continue to violate the exclusive rights held by Plaintiff pursuant to United Kingdom Law

86. Defendants' conduct was direct and willful infringement of the protected design and Defendants are continuing to infringe Plaintiff's Intellectual Property deliberately and willfully despite notice from Plaintiff that their actions infringed upon the exclusive rights of Plaintiff.

87. Plaintiff has suffered compensable injury as the result of Defendants' past acts of infringement.

88. Plaintiff will continue to suffer irreparable harm that is ongoing in nature, due to the continuing acts of infringement by Defendants, for which they are without adequate remedy at law to redress. Said continued and improper infringement should be enjoined by this Court to prevent future injury and damage to Plaintiff.

89.     As a result of its unlawful infringement of, and profiteering from the original design, the Defendants are liable to Plaintiff for damages pursuant to American and United Kingdom law.

90.     Upon information and belief, Defendants' gross revenue and profits attributable to its infringement of the original design is significant, the exact amount of which will be determined at Trial.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF PLAINTIFF'S RIGHTS**

**PURSUANT TO CALIFORNIA CIVIL CODE § 980(b)**

91.     Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 90 as if fully set forth herein.

92.     Plaintiff has exclusive ownership of their invention and design including its graphical representation pursuant to California Civil Code § 980(b) and under California common law.

93.     By their conduct alleged above, Defendants have violated Plaintiffs right to exclusive ownership of their invention and design including its graphical representation.

94.     The Plaintiff invested substantial time and money in the development of their invention and design including its graphical representation.

95.     The Defendants have misappropriated the Plaintiff's invention and design including its graphical representation at no cost and without license or authority.

96.     Defendants have disregarded the Plaintiff's "exclusive ownership" of their invention and design including its graphical representation which has impaired Plaintiff's ability to sell, lawfully exploit, or otherwise control their invention and design including its graphical representation and misappropriated these for the Defendants' own financial gain.

97.     As a direct and proximate consequence of Defendants' misappropriation of the invention and design including its graphical representation

owned by Plaintiff in violation of Civil Code § 980(b) as alleged above, Plaintiff has been damaged in an amount that is not as yet fully ascertained but which upon information and belief exceeds $250,000.00.

98.    Upon information and belief, in engaging the conduct described above, the Defendants acted with oppression, fraud and/or malice.  The conduct of the Defendants has been despicable and undertaken in conscious disregard of the Plaintiff's rights.   Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of them in an amount to be determined at trial.

99.    Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff is therefore entitled to temporary, preliminary and permanent injunctions, prohibiting farther violation of Plaintiff's exclusive ownership of their invention and design including its graphical representation pursuant to California law.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW

### CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

100.    Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 99 as if fully set forth herein.

101.    The acts and conduct of Defendants alleged above constitute an appropriation and invasion of the property rights of Plaintiff in their invention and design including its graphical representation, constitute unfair competition under California Business & Professions Code § 17200 and the common law of California, the United States and/or the United Kingdom.

102.    Defendants have engaged in unfair competitive business practices forbidden by law.

103.   As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to recover all proceeds and other compensation received or to be received by Defendants from their misappropriation of the invention and design including its graphical representation.

104.   Plaintiff has been damaged, and Defendants have been unjustly enriched, in an amount that is not as yet fully ascertained but which upon information and belief is not less than $250,000.00, as will be determined at trial.

105.   Such damages and/or restitution and disgorgement should include a declaration by this Court that Defendants are constructive trustees for the benefit of Plaintiff, and an order that Defendants convey to Plaintiff the gross receipts received or to be received that are attributable to Defendants misappropriation of the invention and design including its graphical representation.

106.   Upon information and belief, in engaging the conduct described above, the Defendants acted with oppression, fraud and/or malice.  The conduct of the Defendants has been despicable and undertaken in conscious disregard of the Plaintiff's rights.   Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of them in an amount to be determined at trial.

107.   Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff is therefore entitled to temporary, preliminary and permanent injunctions, prohibiting further violation of Plaintiffs and the other Class Members right to exclusive ownership of their invention and design including its graphical representation and further acts of unfair competition pursuant to California Business & Professions Code § 17203.

## SEVENTH CLAIM FOR RELIEF

### CONVERSION

108.   Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 107 as if fully set forth herein.

109.   At all times relevant to this Complaint, the Plaintiff was the exclusive owner of all rights and interest in and to their invention and design including its graphical representation.

110.   By their acts and conduct alleged above, Defendants have converted Plaintiff's property rights in their invention and design including its graphical representation for Defendants' own use and wrongful disposition for financial gain.

111.   As a direct and proximate result of Defendants' conversion, Plaintiff has been damaged, and Defendants have been unjustly enriched, in an amount that is not as yet fully ascertained but which upon information and belief is not less than $250,000.00 in an amount to be determined at trial.

112.   Defendants are constructive trustees for the benefit of the Plaintiff, and the Court should therefore order Defendants to convey to Plaintiff the gross receipts received or to be received from the Defendants' misappropriation of the invention and design including its graphical representation.

113.   Upon information and belief, in engaging the conduct described above, the Defendants acted with oppression, fraud and/or malice.  The conduct of the Defendants has been despicable and undertaken in conscious disregard of the Plaintiff's rights.   Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of them in an amount to be determined at trial.

114.   Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff is therefore entitled to temporary, preliminary and permanent injunctions, prohibiting further violation of Plaintiffs and

1  the other Class Members right to exclusive ownership of their invention and design
2  including its graphical representation and further acts of conversion in violation of
3  California law.

4

5      **WHEREFORE**, Plaintiff respectfully prays for a judgment by this Court for the
6  following:

7          A.   Preliminarily and permanently enjoining and restraining
8               Defendants, their employees, agents and representatives, and
9               all persons acting in concert or in participation with them,
10              from using on or in connection with any business, service, or
11              the sale, offering for sale, distribution, advertising,
12              promotion, labeling or packaging, of any services or any
13              goods, or from using for any commercial purpose whatsoever
                the original design or any confusingly similar design;

          B.   Requiring Defendants to deliver up to the Court for
14              destruction, or to show proof (upon the oath of Defendants
15              made subject to penalty of perjury) of said destruction, any
16              and all products, drawstring bags, labels, signs, circulars,
17              packages, kits, wrappers, packaging, letterheads, business
18              cards, advertisements, promotional items, literature, sales
19              aids, or other matter in the possession, custody, or control of
20              Defendants or their agents or distributors, including any
21              materials posted on Defendants' web sites, which bear or
22              depict in any manner the Infringing Products or any colorable
                imitation thereof;

23          C.   Directing Defendants to recall from any and all channels of
24               distribution any products and advertising and promotional

25

materials distributed by Defendants bearing any matter or materials in violation of any injunction entered herein or bearing or depicting in any manner the Infringing Products or any colorable imitation thereof;

D.   Directing Defendants to account to Plaintiff for their profits and ordering that Plaintiff shall recover from Defendants all of its damages and costs arising from the foregoing acts of intentional infringement and unfair competition, and a sum equal to three times these profits and damages pursuant to 15 U.S.C. §1117;

E.   Awarding Plaintiff Statutory Damages for willful infringement as provided by 17 U.S.C. § 504(c)(2) in the amount of $150,000.00.

F.   Awarding to Plaintiff its actual, compensatory, consequential, and incidental damages, in an as yet undetermined amount, resulting from the acts of Defendants complained of herein, and that such damages be trebled;

G.   Awarding Plaintiff exemplary damages against Defendants in an amount sufficient to punish Defendants and to deter similar conduct in the future;

H.   Awarding Plaintiff its reasonable attorneys' fees incurred as a result of this action, in accordance with applicable law, including federal, California and/or United Kingdom law.

I.   Awarding Plaintiff the costs of this action, including expert witness fees, in accordance with applicable law;

J.   Awarding Plaintiff prejudgment, moratory and post-judgment interest on any monetary award according to the maximum allowable legal rate; and

K.   Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: July 29, 2019                    Respectfully Submitted,

                                        /s/ Baruch S. Gottesman
                                        Baruch S. Gottesman, Esq.
                                        185-12 Union Turnpike
                                        Fresh Meadows, NY 11366

Dated: July 29, 2019                    LAW OFFICE OF ARYEH KAUFMAN

                                        /s/ Aryeh Kaufman
                                        Aryeh Kaufman, Esq.

                                        *Attorneys for Plaintiff*
                                        **DEUCE STUDIO**

**PLAINTIFF HEREBY RESPECTFULLY DEMANDS A TRIAL BY JURY**

---

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT**